[697 NYS2d 49]

In the Matter of Stephen I. Munzer (Admitted as Stephen Ira Munzer), an Attorney, Respondent. Departmental Disciplinary Committee for the First Judicial Department, Petitioner.

First Department, October 28, 1999

**APPEARANCES OF COUNSEL**

*Naomi F. Goldstein* of counsel (*Thomas J. Cahill,* attorney), for petitioner.

*Michael A. Gentile* of counsel (*Gentile, Brotman & Benjamin,* attorneys), for respondent.

## OPINION OF THE COURT

Per Curiam.

Respondent was admitted to the practice of law in the State of New York by the Second Judicial Department on February 26, 1964 as Stephen Ira Munzer. At all times relevant to this proceeding, respondent maintained an office for the practice of law within the First Judicial Department.

On January 14, 1999, the Departmental Disciplinary Committee served respondent with a Notice and Statement of Charges containing three disciplinary charges concerning respondent's conversion of client funds being held in his escrow account. In answering the charges, respondent admitted all of the facts and admitted all of the charges, except that his conduct reflected adversely on his fitness to practice law.

The facts with regard to this matter are undisputed and were stipulated to by respondent.

Respondent represented the seller in the sale of his apartment and also acted as escrow agent for the transaction. On July 29, 1997, respondent deposited into his escrow account $48,000, which represented the buyer's deposit. On August 20, 1997, respondent withdrew, by check made payable to himself, $4,200 of the deposit and used it for personal expenses. Thereafter, on August 25, 1997, respondent withdrew, by check made payable to himself, an additional $10,000 of the deposit. The check was deposited directly into a personal account which respondent maintained at Smith Barney. Respondent was not authorized by either the buyer or the seller to withdraw for his personal use any of the escrowed monies. Respondent did not replace any part of the $14,200 until November 1997, when the closing on the apartment occurred.

A hearing was thereafter conducted before a Referee who, in his report and recommendation, dated April 29, 1999, sustained all the charges and recommended that respondent receive a public censure.

He found that by withdrawing monies entrusted to him as an escrow agent and using the funds for his own personal benefit without authorization, respondent engaged in conduct involving dishonesty, fraud, deceit or misrepresentation, in violation of Code of Professional Responsibility DR 1-102 (A) (4) (22 NYCRR 1200.3). He further found that, by withdrawing

$14,200 of the real estate deposit from his escrow account without authorization, respondent failed to maintain intact the entire amount of the funds entrusted to him as a fiduciary, in violation of DR 9-102 (B) (22 NYCRR 1200.46). Finally, the Referee also found that by the foregoing, respondent engaged in conduct that adversely reflects on his fitness to practice law, in violation of DR 1-102 (A) (8).

In sustaining the charge that respondent intentionally converted client funds, the Referee noted this Court's consistent holding that the return of converted funds, and the fact that an attorney did not intend to permanently deprive any party of funds, does not negate such intent or otherwise excuse the wrongful conduct (*see, Matter of Baumgarten*, 236 AD2d 30; *Matter of Britton*, 232 AD2d 17). The Referee further stated, "Similarly, respondent's personal relationship with his client; his knowledge that the real estate deal was virtually certain to close and, as a result, his knowledge that the escrow would be transferred to his friend and client who would have been willing to lend him the funds or otherwise authorize their release does not transform the act to something other than a conversion."

With regard to sanction, the Committee's position was that there were no extraordinary extenuating circumstances justifying deviation from this Court's policy of disbarring an attorney who has intentionally converted client funds. Moreover, in aggravation, the Committee pointed to the fact that respondent had previously received an admonition for making false statements to the Committee and in court documents, in violation of DR 1-102 (A) (4). Based upon the argument that he had not engaged in venal conduct, respondent sought a public censure.

Taking into account the mitigating and aggravating factors in this case, the Referee determined that public censure was an appropriate sanction. In doing so, he found, in pertinent part, that there were "factors and extenuating circumstances" warranting the imposition of something less than disbarment.

First, the Referee took into account respondent's character evidence demonstrating his reputation for competence and integrity, including the testimony of the seller of the apartment, who is a prominent businessman and a long-time client of respondent, who testified that he would have willingly loaned respondent the funds involved here had he been asked.

He also took into account that respondent's conversion was an isolated incident in which he invaded the client funds while he was under great personal stress. Respondent and his wife

had been temporarily living in a hotel, having been burned out of their apartment, and were waiting for their insurer to cover the cost of repair to the apartment and for interim accommodations. The converted funds were used to pay a contractor to commence the repair work.

Finally, the Referee took into account that respondent exhibited great remorse and shame for having invaded the escrow, instead of confronting his problem directly by calling on friends or relatives who would have been willing to loan him the funds involved and noted that respondent had been completely forthright in his testimony and admission of wrongdoing, and fully cooperated with the investigation.

A Hearing Panel then heard oral argument and received further written submissions, after which a majority of the Panel made clear that respondent's contention that he lacked venal intent was rejected. However, although it agreed with the Referee's conclusion that disbarment was not warranted given the mitigating circumstances, it determined that a one-year suspension was appropriate. One member dissented and recommended that respondent be disbarred.

The Departmental Disciplinary Committee now moves for an order pursuant to 22 NYCRR 605.15 (e), confirming the findings of fact and conclusions of law set forth in the Hearing Panel's determination, and imposing a sanction which this Court deems just and appropriate. Respondent opposes the instant petition and cross-moves for an order disaffirming the Hearing Panel's determination insofar as it modified the Referee's recommendation that he be publicly censured.

Given respondent's stipulation to the facts, we agree with the Hearing Panel's findings of fact and conclusions of law. Moreover, considering the mitigating factors found by the Referee and the Hearing Panel majority, we agree with the Hearing Panel that a one-year suspension is the appropriate sanction.

Accordingly, for the foregoing reasons, the Hearing Panel's findings of fact and conclusions of law as well as its recommendation that this Court impose a one-year suspension should be confirmed and respondent should be suspended from the practice of law, effective 30 days from the date of this order, for a period of one year and until the further order of this Court.

Tom, J. P., Andrias, Saxe, Buckley and Friedman, JJ., concur.

Petition granted and respondent suspended from the practice

of law in the State of New York for a period of one year, effective 30 days from the date hereof, and until the further order of this Court.