[704 NYS2d 579]

In the Matter of GERALD J. NEUFELD, an Attorney, Respondent. DEPARTMENTAL DISCIPLINARY COMMITTEE FOR THE FIRST JUDICIAL DEPARTMENT, Petitioner.

First Department, March 21, 2000

---

**APPEARANCES OF COUNSEL**

*Andral N. Bratton* of counsel (*Thomas J. Cahill,* attorney), for petitioner.

*Patrick M. Wall* for respondent.

### OPINION OF THE COURT

Per Curiam.

Respondent, Gerald J. Neufeld, was admitted to the practice of law in the State of New York by the Second Judicial Department on August 20, 1974. At all times relevant herein, respondent has maintained an office for the practice of law within the First Judicial Department.

By a notice and statement of charges dated February 1, 1999, the Departmental Disciplinary Committee (the DDC) charged respondent with violating Code of Professional Responsibility DR 1-102 (a) (4) and (8) (now [7]) and DR 9-102 (a) and (b) (22 NYCRR 1200.3, 1200.46) by, *inter alia,* deliberately converting client funds entrusted to him as an escrow agent and in failing to preserve those funds. By his answer, respondent admitted the factual allegations, admitted the charges that he violated DR 9-102 (a) and (b) and left "to the Judgment of the Referee" whether he also engaged in conduct involving intentional conversion.

The Referee issued a report and recommendation, on August 20, 1999, sustaining all 24 charges and recommending that respondent be disbarred. The Hearing Panel, after oral argument, confirmed the findings of the Referee and recommended that respondent be disbarred.

Respondent intentionally converted client funds belonging to 12 different clients in violation of DR 1-102 (a) (4) (12 counts). These conversions took place over a seven-year period between 1991 and 1998. The Referee found that if one of respondent's clients had not complained in 1998, the conversions would have continued. The Referee also sustained charges that by

failing to maintain the client funds intact, and by allowing his escrow account balance to drop below the level required to maintain the clients' funds, respondent failed to preserve the identity of clients' funds, in violation of DR 9-102 (a) and (b) (11 counts). Respondent was also charged with fraudulent conduct in attempting to conceal his conversion with respect to one of the matters. Finally, the Referee found that the aforementioned conduct reflected adversely on respondent's fitness to practice law.

Respondent misappropriated funds from his escrow account to deposit into his own personal account by using one client's money to pay obligations owed to another client, and then continuing the process from client to client and obligation to obligation. Respondent claimed that six of the 12 clients gave him permission to delay the payment to which they were entitled, but in no instance did respondent explain his true reason for delaying payment, i.e., that he was using their funds for his own personal use.

The DDC moves for an order, pursuant to 22 NYCRR 603.4 (d), confirming the determination of the Hearing Panel as well as its recommendation that respondent be disbarred. In opposition, respondent argues that, contrary to the findings of the Referee, as confirmed by the Hearing Panel, extremely unusual mitigating circumstances exist in this case and, therefore, the Referee's report and Hearing Panel's determination should be disaffirmed and a sanction of suspension imposed.

Since respondent's intentional conversion of escrow funds is essentially undisputed, the main issue presented by this case is whether a sanction less than disbarment is warranted. This Court has consistently held that absent "extremely unusual mitigating circumstances," an attorney who has intentionally misappropriated client funds is presumptively unfit to practice law (see, Matter of Lubell, 190 AD2d 479). Respondent argues that his sanction should be reduced to a period of suspension based upon the "extremely unusual mitigating circumstances" that are present, which includes evidence of respondent's wife's serious psychiatric problems and respondent's 12-year-old son's serious developmental disability, whereby he functions at the level of approximately a two-year old, requires constant attention, and is prone to violent behavior.

According to respondent's hearing testimony, beginning in 1991, his wife, who had a pathological obsession with financial security, demanded that respondent put aside $25,000 per month as savings. Respondent took her demands very seri-

ously since she threatened to take her own life and the life of their son if respondent did not comply and he began taking escrow funds in order to meet her demands. According to her psychiatrist, her psychological condition has now been alleviated due to the knowledge of what her condition caused respondent to do.

We find that these facts, however sympathetic, do not constitute "extremely unusual mitigating circumstances" justifying a sanction less than disbarment. The conversion occurred on 12 separate occasions, there was every indication that it would have continued but for the client complaint, respondent was not truthful with his clients about what was happening with their escrow funds, and respondent did not sufficiently demonstrate a causal connection between his family's problems and the conversions (*see, Matter of Rivera*, 230 AD2d 74). No evidence was offered to show, and it is not contended, that respondent converted monies because he had no other source to pay for his wife's and son's psychiatric and physical needs. Indeed, respondent was living a very comfortable lifestyle with a net worth of approximately $200,000.

There is a wealth of controlling authority in this Department supporting disbarment under these circumstances (*see, e.g., Matter of Tate*, 258 AD2d 120; *Matter of Mulrow*, 241 AD2d 7; *Matter of Britton*, 232 AD2d 17; *Matter of Rivera*, 230 AD2d 74, *supra*; *Matter of Ampel*, 208 AD2d 57). The authorities cited by respondent, allegedly supporting the imposition of a lesser sanction, are readily distinguishable. This Court's recent decision in *Matter of Cohen* (264 AD2d 94 [1st Dept, Jan. 18, 2000]) involved the extreme negligence of a fiduciary in failing to safeguard corporate funds, resulting in conversion by a third party, and there was no finding that the respondent made personal use of the escrow funds. In *Matter of Munzer* (261 AD2d 87), respondent converted the funds of only one client and he returned the escrow funds prior to the closing. Furthermore, the client testified that he would have permitted respondent to borrow the subject funds had he been asked, and Munzer and his wife were temporarily homeless since their apartment was destroyed by fire and were having severe financial difficulties.

Accordingly, the Committee's petition should be granted, the Hearing Panel's determination and recommendation confirmed, respondent disbarred from practice as an attorney and counselor-at-law, and his name stricken from the roll of attorneys and counselors-at-law in the State of New York, effective immediately.

ROSENBERGER, J. P., NARDELLI, WILLIAMS, ELLERIN and SAXE, JJ., concur.

Petition granted and respondent disbarred from practice as an attorney and counselor-at-law in the State of New York, and his name stricken from the roll of attorneys and counselors-at-law in the State of New York, effective immediately.