[744 NYS2d 171]

In the Matter of ROBERT G. HARLEY (Admitted as ROBERT GEORGE HARLEY), a Suspended Attorney, Respondent. Departmental Disciplinary Committee for the First Judicial Department, Petitioner.

First Department, June 27, 2002

**APPEARANCES OF COUNSEL**

*La Trisha A. Wilson* of counsel (*Thomas J. Cahill,* attorney), for petitioner.

*Emily K. Harley* for respondent.

**OPINION OF THE COURT**

Per Curiam.

Respondent Robert G. Harley was admitted to the practice of law in the State of New York by the Second Judicial Department on October 19, 1966, as Robert George Harley. At all times relevant to this proceeding he has maintained an office for the practice of law within the First Judicial Department.

By a per curiam opinion of this Court dated April 19, 2001 (293 AD2d 131) and an order dated May 11, 2001 (283 AD2d 234), respondent was found guilty of professional misconduct in violation of Code of Professional Responsibility DR 1-102 (a) (4), (7) and DR 2-106 (a) (22 NYCRR 1200.3, 1200.11), and this matter was referred to a referee for a hearing as to sanction only. Respondent was at that time also temporarily suspended from the practice of law pursuant to 22 NYCRR 603.4 (e) (1) (iii) and (iv).

The nature of respondent's misconduct was set forth at length in this Court's prior per curiam opinion. Essentially, he made false and misleading statements to his clients in order to induce them to sign a back-dated retainer agreement, so that his law firm could obtain a fee approximately $382,000 greater than that to which they were entitled either by agreement or by statute. He then falsely represented to the court that the newly-obtained retainer agreement had not been filed on that earlier date due to an oversight.

The Referee heard testimony in mitigation from numerous character witnesses as well as from respondent himself. This testimony established that aside from the charged misconduct, respondent's professional life had been exemplary. As the Referee concluded, "This is not a case of a bad man doing a bad thing. It is the case of a good man inexplicably doing a very bad thing—a lifetime distinguished by professional success, service to his profession and good citizenship marred by one incalculably wrongful act, deliberately done." Although the Referee recommended disbarment, the Hearing Panel concluded that four years' suspension was the proper sanction. It looked primarily to "the truly laudable adult life he has led for over three decades aside from the 'one incalculably wrongful act, deliberately done.'"

In view of the conflicting recommendations of the Referee's report and recommendation and the Hearing Panel's determi-

nation, the Departmental Disciplinary Committee moves, pursuant to 22 NYCRR 605.15 (e) (1), for an order imposing such sanction as this Court deems just.

"We have consistently held that, absent unusual mitigating circumstances, conversion of clients' funds constitutes serious professional misconduct which generally warrants disbarment" (*Matter of Rivera*, 230 AD2d 74, 75, citing *Matter of Ampel*, 208 AD2d 57, 60, and *Matter of Pelsinger*, 190 AD2d 158, 161; *see also, Matter of Britton*, 232 AD2d 17, 20; *Matter of Glazer*, 218 AD2d 411, 413; *Matter of Lubell*, 190 AD2d 479; *Matter of Landau*, 180 AD2d 257, 258). "This result is called for by the obvious reflection on the attorney's integrity, and more importantly, by the duty to protect the public *and to vindicate the public's trust in lawyers as custodians of clients' funds*" (*Matter of Britton, supra*, 232 AD2d at 20 [emphasis added]). "Where conversion of funds belonging to a client or third party occurs through mistake, carelessness, or failure to keep proper records, 'venal intent,' or a 'motive to convert,' may indeed be absent, and we have held that suspension in such circumstances is an appropriate sanction" (*id.* at 19). However, where the presence of venal intent is established, as here, limiting the sanction to a suspension is proper only when the mitigating circumstances are "extremely unusual" (*see, Matter of Rivera*, 230 AD2d 74, 75, *supra*).

We recognize that in *Matter of Albanese* (274 AD2d 284), a four-year suspension rather than disbarment was imposed where the attorney intentionally converted to his own use the down payment for the purchase of a cooperative apartment which he was holding in escrow. This Court remarked there that its leniency was prompted by the attorney's previously unblemished record and the isolated nature of the incident (*id.* at 286). However, the misconduct here was more than a simple, temporary conversion of someone else's money. Although it may be viewed as a single, isolated incident, it involved intentionally lying to both respondent's clients and to the court, in order to carry out the conversion of funds which should have been turned over to the clients.

Respondent's otherwise laudable career does not offset these deliberate, wrongful acts, undertaken in order to provide his financially-strained law firm with funds that should properly have gone to his clients. We do not find the character evidence to constitute the type of "extremely unusual" mitigating circumstances contemplated by our prior cases.

Accordingly, the motion should be granted insofar as to confirm the findings of fact as found by the Referee and adopted

by the Hearing Panel, and we determine that disbarment, as recommended by the Referee, is the appropriate sanction here, and should be imposed.

WILLIAMS, P.J., NARDELLI, SAXE, SULLIVAN and RUBIN, JJ., concur.

Respondent disbarred, and his name stricken from the roll of attorneys and counselors-at-law in the State of New York, effective the date hereof.